Thank you, Your Honor. May it please the Court. The District Court ruled in this case that as a matter of law, Home Depot was not responsible for the workplace sexual harassment Ms. Harmon endured. The District Court ruled that there was no evidence that Ms. Harmon had utilized the complaint procedure with perseverance and that the Home Depot had taken adequate prompt remedial measures. The District Court erred. The evidence shows that, in fact, Ms. Harmon followed Home Depot's sexual harassment complaint policy to the letter. She went through each of the steps in precisely the order that the policy mandated. The first thing she did was go to the harassers, the acting department head on the night crew, Rob Abbott and Joe Burnham, and asked them to stop what they were doing. That didn't work. Harassment continued. The next thing she did was go to the assistant manager, Bill Haytack, and tried to report what had been happening the last several weeks. She started to tell him, and he cut her off, saying, I know. We're trying to replace Mr. Abbott. Hang in there until there's a new department head. She did exactly what she was told. She hung in there until the new department head came in, Mr. Kilmer. On his very first night on the job, she went to him and, again, complained about the harassment, went into considerable detail as to what had been occurring for the past six weeks, then talked to Ms. Reininger the next morning about it, submitted a brief written statement that didn't contain many of the allegations she had already talked to them about. For the next month, here's nothing back, nothing at all. But there was action on the part of the night manager, was there not? The night manager being Mr. Kilmer? Yes. He brought her in to Ms. Reininger, and then they called Home Depot human resources. Human resources said to do several things, to counsel Mr. Burnham and Mr. Abbott, to show them job profiles, and to show them the same training film that they had been shown initially. The only one that they did was the third of those. They showed all the employees but Ms. Harman the same film they had shown them that hadn't worked the first time. That's the only remedial measure that Home Depot took. This Court has – Didn't they also talk to the two offending employees? Not about the allegations, Your Honor, no. That did not happen until after Ms. Harman resigned. The record is quite clear that all that Mr. Kilmer did after the film said, did you see the film, did you understand it, and they said yes. That is all they talked about. The evidence is undisputed that Mr. Burnham and Mr. Abbott were not talked to about Ms. – But they had a private discussion with Burnham and Abbott, didn't they? About the film, not about the allegations. But they didn't have a private discussion with all the night crew employees who saw the film, I assume. No, Your Honor, they did not have a private – So they called the – they showed the film to everybody. Right. And they called the two offending persons in for a private chat, did you understand the film, whatever they said. And your point is they didn't review the specific allegations of your client. Well, Mr. Abbott testified he didn't even know that that's what he was being called in for. Mr. Burnham apparently figured it out later on. But at the time, they didn't even know that that's what they were being called in for, anything that had happened with respect to Ms. Harman. But they had a private talk, was the only point I – here's what bothers me about the appellant's case. So you can address it at some point in your argument. Under the considerations about the Farragher-Eller defense, my question is, do we have to look at this claim by claim? So, for example, it seems to me your client did follow – did take advantage of procedures as to the initial allegation of sexual harassment. However, at least as I understood the situation, it seemed your client did not take advantage of the procedures with regard to the subsequent complaint, that there was retaliation because people were cool to her, or they did – they were quiet, or they ostracized her. And that was never presented to Home Depot. So I don't see what they could do about that. Let me respond – So my legal question is, do we look at Eller's Farragher issue by issue? That's one point I want you to respond to. Sure. And could there be a difference between the harassment – initial harassment, whether she has a remedy for that, versus the later alleged ostracism? And the other question I need you to get – well, why don't you cover that now? I think there – McGinnis says that in terms of looking at the conduct and whether there was adequate remedy, you look to the conduct as a whole. In this case, I think there is a difference between how you look at it, because at the time that the was undergoing, we contend that Mr. Abbott, at least, and perhaps Mr. Burnham as well, were direct supervisors to which Farragher-Ellerth applies. We do not contend that after Mr. Kilmore became the department head, that they continued to exercise supervisory functions. So as to the retaliation, we don't believe that Farragher-Ellerth is the right test. It's the knew or should have known test. And under these circumstances, I think we can show that they knew or should have known, because Mr. Kilmore – Kilmore perceived the ostracism and wrote Ms. Harmon up for it in their performance review. We know they knew. He knew that she had filed a complaint, and then he writes up in her performance review that there's walls between her and her colleagues and that she needs to break them down. So I don't think it's a knew or – it's a knew or should have known, and here we have actual knowledge on the part of Home Depot's managers that this is what's going on. I thought the break down the walls thing was not a particularized criticism of her, but was a theme the company had used previously for everybody. That's their testimony, and perhaps viewed in the light most favorable to Home Depot, that may be the case. I don't think it really matters. Ms. Harmon took it as a criticism, as an unfavorable comment in a performance review, and that's our view here. I don't know if her subjective – we look at the actual evidence in the light most favorable to your client, but I don't know if her subjective feeling alone is controlling. I don't think it's controlling, Your Honor, but the reissued opinion in the Vasquez case says whether something is retaliatory, whether it is to chill would chill a reasonable person in the exercise of protected activities is primarily a subjective inquiry, and that is the holding of the reissued Vasquez opinion. I think we have some authority that ostracism would have to be pretty extreme to rise to the level of retaliation. I'm not sure here that that really happened. You don't expect the people who've been criticized for their harassment to interact necessarily with the complainer, and that's maybe what was happening here. That's not all that was happening here. We would concede that under the circuit precedent that ostracism alone is not an adverse action, but there were other things going on as part of the retaliation case, and again, this is separate from the issues of the initial case. First thing was there was derisive comments made about sexual harassment, comments like, oh, don't say that, that's sexual harassment, that went on persistently, and we do have authority that that can be continuing harassment. That's both the McGinnis case and the Draper case. That kind of derision about the complaint process is viewed as harassment, so it's not ostracism. Second, we view the retaliation part as including the performance review under the Cass Paw cases, is that the performance review here signed by Mr. Kilmer and Ms. Renninger criticizing Ms. Harmon, who then also was counseled for her not breaking down the walls, is in fact an implementation of the ostracism. But they gave her the highest rating in all of her performances. There were only two, pass and fail. They gave her a pass. I mean, there were only two options. She was an excellent employee. A rave comment about what a great client relations person or customer relations person she was. She'd be great at this or that. That was earlier, Your Honor. That was not part of this review. That was said to her when she was hired by Mr. Haytack. Let me give you the other legal issue that I have on my mind, and maybe you could case. My understanding is that there's a circuit split, and the Ninth Circuit has not weighed in yet. On the issue whether, apart from Ellerth Farragher, if you have an employee who avails themselves of the company procedures, but then the company takes prompt action, and it's the end of the harassment ads, if that's a defense. My understanding is that the Eighth Circuit has gone one way, and following a Fifth Circuit solo opinion of Edith Jones, but you've got the Eighth Circuit one place and the Tenth Circuit the opposite place. So that's an issue that may come into play here, based at least on some views of the evidence. Let me see if I can deal with that. Maybe you could give us your view of that legal issue. I think it's different whether we're dealing with Farragher-Ellerth supervisor versus co-worker negligence. In fact, the Eighth Circuit says specifically that if it's a supervisor involved, that it doesn't matter whether or not they knew at the time. Co-worker, there is a split. However, I believe this Court on the issue, and even on the issue of co-worker, which I think was going to be a less stringent standard for the employer than supervisor, which we have here, in the Nichols case, and I believe it was the Little case, cases that you were both on the panel, Your Honor, they said that if the remedy is not adequate, the employer is liable for the past harassment. In the Little case, the rape had occurred. All the offending conduct had occurred prior to the time the employer knew. So I think in those two opinions, actually the Ninth Circuit has answered the question, even as regards to cases under the negligence standard. I'm not aware of there being a split in cases where Farragher-Ellerth applies. I believe in that case that they are strictly liable unless they can prove the defenses, which, as I said, is a matter of law. They certainly can't prove that she didn't use the policy. And that's enough to overcome the sexual harassment defense. They have to prove both of them. Here, again, I think a jury could certainly find that the Home Depot's response, starting with Mr. Haytack's failure, I mean, cutting her off and not letting her finish and finding out what she was talking about when he says, she calls me names at work. It turns out she was talking about the word bitch. Just cutting her off, that certainly was negligent, not finding, not proceeding to do an investigation. This court has said that the Clemson case, that the most important remedial measure an employer can do is to undertake a prompt investigation. She filed an oral complaint in April, a written complaint in early May. It is undisputed that no investigation occurred until after she filed a second complaint in mid-June. And even then, they didn't begin for a week, because the HR person said it was old news. So again, a jury could easily find here that the remedial reaction was not adequate. And again, all they did was the same thing that didn't work in the first place. Whether you view what happened afterwards as independently actionable retaliation or not, I don't think that matters. It still goes to whether the fact that they created circumstances to make auspicism more likely, that this derision went on, that they never trained anybody, including Ms. Harmon, as to what retaliation to look for, something that their own HR person admitted was essential, all create an environment where this kind of ostracism would occur. What do we make of her always saying, when they asked her, admittedly in kind of a public setting, how things were going, she'd say, okay. If I were the supervisor, I might think, yeah, things are okay. That did come up, Your Honor. And I think, I asked Mr. Gores that question in deposition. Well, you knew things weren't okay. And he said, yeah. You didn't follow up. And he says, well, I didn't want to lead her. Well, an investigation into harassment is not direct examination in court. You don't have to worry about leading the witness. They knew things weren't fine. She had tears in her eyes. And in terms of, get back to a principle that's in many of the cases of this court. When the employer does, she was not told they had done anything. In her mind, the employer's lack of action, there was no follow-up. They never talked to her after she submitted her statement. Showed a condoning and a ratification. She concluded they just didn't care. That this open door policy of sexual harassment is that she reported it twice. It had gone nowhere. That's at least up to a jury of whether that's reasonable conduct under the circumstances. Well, she knew it had gone somewhere because they quit talking to her. Someone, well, she didn't know, she wasn't sure why that was. I mean, I don't know whether she made the causal link in her own mind. She certainly was not told by anyone in Home Depot what they had done, what they were doing, or what they were going to do. Did she testify that after the complaint she made, that the offending persons, Abbott and Burnham, senior employees, maybe supervisors, depending on how that legal issue comes out, that they ceased the comments? No, Your Honor, that is not the record. Many of the, most of the direct comments to her subsided. It was, that's what Mr. Gores said he asked. But the shake your money maker comment continued. I'm not sure that she said they stopped making comments to her. They stopped harassing her, but the guy who would go around saying shake your money maker, he still said that to other people, but he didn't say anything to her. And in terms of the sexual- Is that correct factually? That is correct, except this derision for the sexual, making fun of sexual harassment. And I don't think, being a non-lawyer, she understood that that itself was a continuation. Did Burnham or Abbott deride her? Yes, yes, Your Honor, yes. And what's the testimony as to how they derided her? Every time, when things would come up, Burnham or Abbott would say, oh, don't say that, that'll be sexual harassment. They made fun of sexual harassment. They put light on it. They made jokes about it. And this Court has precedent that mocking and deriding sexual harassment and sexual harassment complaint procedure is itself what you want to look at as harassment or retaliation. I don't think it really matters, but there is that testimony from Ms. Harmon herself, Your Honor. And again, the issue on the supervisor, and then I'll save the time for rebuttal. The district court clearly applied the wrong test. The district court applied the Brooks-Lamb test for who's a manager. The question for this Court is, does it want to follow the EEOC Second Circuit test, which we urge that the Court should follow, who's a supervisor, and we think that Mr. Abbott at least falls under that, or the Seventh Circuit test, where several judges in the Seventh Circuit have urged that it be done en banc. That is an open question in this Court, and we urge that the Court follow the EEOC Second Circuit test. Thank you, Your Honor. Thank you very much. Okay, Mr. Subit has reserved a few times in that – a few moments, rather. Now, we'll hear from Ms. Mays. Ms. Myers. Ms. Myers. Thank you, Your Honors. May it please the Court, I'm Kimberly Myers, here on behalf of Home Depot, along with my partner, Mike Riley. And we are here to talk about this case and the undisputed facts that supported Judge Kuhnauer's grant of summary judgment. If I could please point out one portion of the record, which I think is critical to the questions that you, Judge Gould, initially asked. Why was it that Abbott and Burnham weren't talked about specifically about Ms. Harmon's complaint? If you look at page 248 of the record, it's Ms. Harmon's own deposition. Line 11, I remember asking her – that means Teresa Renninger, the assistant store manager – if she would have a meeting of some sort and refresh everyone's memory not to harass. I didn't want to feel. I didn't want anyone to know it was me, let's put it that way. And so Mr. Riley asked Ms. Harmon, so you said you wanted a meeting held with the night crew, essentially? Yes, sir. And what did Teresa say? She said she will have one. The reason that Home Depot took the actions it did, in part, were based on Ms. Harmon's own request for what she viewed to be a reasonably calculated remedy to stop the harassment in this matter. Home Depot took a number of prompt, corrective actions, as the law does require. On May 9th, Ms. Harmon complained to her new department head, Mr. Kilmer. Within the same time that she was still on the shift, she then talked to the assistant store manager, Teresa Renninger. Within 24 hours of that conversation, both a 25-minute conversation with Mr. Kilmer, a separate in-office conversation with Ms. Renninger, and writing a statement out, within 24 hours on May 10th, retraining occurred for the entire night crew, just as Ms. Harmon suggested and requested. Now, what Ms. Harmon claims that she wasn't part of that retraining, but nobody knows, including Ms. Harmon, as to why she wasn't there. The undisputed fact is that Mr. Kilmer called over the intercom and asked everyone to come into a training meeting because an issue had been raised. Ms. Harmon's records, if you look at them, her time records on page 12 of the records show that she worked 4.5 hours that day. We don't know why she didn't work a full shift, and neither does plaintiff. And there's no evidence in the records showing that in any way Home Depot tried to prevent her from attending this very critical retraining that she, in fact, herself requested. Home Depot took a strong view that its respect policy and its harassment policies needed to be complied with by every member of the night crew. It then, separately, as you point out, talked with Mr. Burnham and Mr. Abbott. Not only generally did you understand the video, but Mr. Kilmer went further. He specifically talked to Mr. Abbott and Mr. Burnham about the specific types of allegations that Ms. Harmon complained about. If you look at the record at around 112 to 113, Mr. Kilmer specifically generalized his comments, not just to the video, but to them. I catered it to the audience, is what I would say. I specifically said, I'd give an example. He gave an example. If you're talking about a girl and she walks around the corner, you're talking about what happened the other night, it might offend someone. He specifically catered his comments to both Mr. Abbott and to Mr. Burnham about Ms. Harmon's complaint. He asked them if they understood the video. He reiterated Home Depot's policy. He told them what would happen if, in fact, they did not comply with the policy. That was even further than what Ms. Harmon herself suggested would be a remedy. But Home Depot went further than that. Home Depot repeatedly followed up with Ms. Harmon. Specifically, Ms. Harmon, taking the undisputed facts here, on page 75 of the record, Ms. Harmon admits that she had an in-person meeting in the office, not on the store floor, but in the office with Ms. Renninger about a week or two after the incident. And she was asked, are you okay? And what did you say? I said I was okay, line 14. She also admits to at least a half a dozen conversations with her department head, Brian Kilmer, about Brian stopping by. She says at least once a week, we know that she worked there for, she was actually in the store for at least six more weeks. She stopped by, he stopped by at least six times to say, how are you doing? And she said every time, I'm okay. Now that we're in litigation, Ms. Harmon says that those comments to Mr. Kilmer, to Ms. Renninger, and we contend to Mr. Gores, to Ms. Robinson,  also to Mr. Haytack, who also followed up with her after her initial conversation with him about on the garbage run. She says that all of those times, when she said she was okay, she was lying. While taking the undisputed facts of this case, and taking her at her word, Home Depot either acted promptly to correct the harassing behavior, if the Farragut-Eller standard applies, and if you were to conclude that Abbott or Burnham are supervisors, which we certainly dispute. But even if Abbott and Burnham are not supervisors, the standard is a negligence one. And the standard is, did Home Depot take adequate corrective actions, reasonably calculated, to end the harassment? And on the undisputed facts of this record, Ms. Harmon absolutely requested a specific remedy. She received that remedy, but Home Depot did more, and they followed up to make sure that that remedy would be complied with, and that it was sufficient. Could I ask you a legal question about that? Certainly. Assuming that we were to determine that Home Depot took reasonable corrective actions after the complaint, does she have a remedy for the harassment before the complaint? She doesn't have a remedy for the harassment before the complaint, because- Meritor says there's not strict liability, but it wouldn't be under Ferreth-Elliger, because she did avail herself of the procedures. She did not avail herself of the procedures, and you're correct. The- Wait, I thought she did avail herself as to the first harassment. As to the first harassment, she did certainly talk with, we certainly don't think that a vague comment to someone on a garbage run that says, hey, you know, do I have to take direction from someone? And they say, well, they've been here longer than you, so I'd appreciate if you'd listen to them. We certainly don't contend that that was a sufficient notice to put Home Depot on notice under either Ferreth-Elliger or under the negligence standard. But when Ms. Harman specifically complained to Mr. Kilmer- Okay. Ms. Harman had a remedy. Home Depot took every action it could reasonably have taken under the circumstances. And is the law clear that if that's the case, exactly what you said, she properly complained to Mr. Kilmer, Home Depot properly corrected things from then on? I'm just assuming that. Right. Does she lose any remedy for the initial harassment? She does not lose a remedy. Home Depot, I'm sorry, she does lose a remedy. Home Depot is required to take reasonable steps, even if Home Depot's reasonable steps were wrong, which in this case they weren't because Home Depot repeatedly asked her, are things okay? And she kept saying they are okay. Now, only now, far after the initial complaint, does she say, well, actually, the comments didn't stop. Actually, the moneymaker comment continued. So as I understand your question, Judge Gould, you're asking whether the fact that she now says the moneymaker comment happened means she doesn't have a remedy. I'm more wondering if, assuming we treated them as supervisors- Yes. We thought there was an issue of fact on that. If we think there's an issue of fact, whether they're supervisors, so that the appellant's entitled to have a trier of fact determine whether they're supervisors. And if we also thought Home Depot corrected things after she talked to Kilmer, would she have a remedy for supervisor harassment, if she prevailed on that, for the period up to when they took the corrective action? She doesn't have a remedy because the time that, from the time that she complained of harassment on May 9th, they corrected the harassment on May 10th. And what Farragher and Ellert are clear in their terms in saying is that employers are not vicariously liable until they've been put on notice. So long as the employer has taken prompt actions initially, i.e., having a policy, disseminating that policy to individuals so that they know that there is a procedure in place. If employers have taken that preventative step to prevent harassment, at the point at which then harassment is then reported to them, they have to take corrective actions. But they're not liable for the prior, the actions prior to that notice. So Ellert, and you say Ellert, Farragher makes that clear. They're not vicarious, the employer's not vicariously liable for a supervisor's actions prior to notice. That's correct. Okay, then. Unless there's been a tangible employment action and there's no allegation of that here. Okay, and I apologize because the law in this area I find challenging to totally absorb it. Am I right that there's a split in these circuits about whether if someone is a, if a company has taken prompt action, Ellert, Farragher, I'm not, I'm sorry, if the employee has made a complaint but the company has solved it, whether Ellert, Farragher applies? I don't think there is a split in the circuits on that point. There may be a split in the circuits as it relates to a negligence standard. But under the Farragher, Ellert, keep in mind, only applies if there's, if the acting individual is a supervisor with direct authority over or successively higher authority over the individual. So under Farragher and Ellert, there's a duty on employers before the alleged harassment just to generally protect employees, thus have a policy in place, disseminate that policy. In this case, Ms. Harmon had two days worth of orientation. She clearly had training on the policy. And once the employer has noticed, has done those preventative steps, and then has corrected promptly sexually harassing behavior, at least in this circuit, once the employer has correctly correct and corrected that behavior promptly, then there is not, then there is an affirmative defense for employers. And the employer is not liable from that point on, so long as the employer can prove both elements of its affirmative defense. One, that it exercised reasonable care by either having a policy up front and promptly correcting the behavior upon notice of it, and two, that the plaintiff unreasonably failed to take advantage of any preventative measures. Counsel, is there no distinction between who the harasser is, if the harasser is the supervisor or is just an ordinary employee? Is there a distinction? There's certainly a distinction. Farragher-Ellert only applies to supervisor harassment. The standard under, the way that I look at this, Farragher-Ellert first says, plaintiff has to prove, number one, that the person who's doing the harassing is the supervisor. And then, once the plaintiff makes that burden, then the burden shifts to the defendant to essentially establish the affirmative defense. Did the employer exercise care to prevent the harassment and correctly prompt, promptly correct the harassment upon notice? And did the plaintiff unreasonably fail to take advantage of those preventative measures? In this case, Ms. Harmon, we certainly dispute the fact that Ms., Mr. Abbott or Mr. Burnham could be supervisors. If you look at the EEOC standard, which plaintiff relies on extensively, the EEOC standard specifically says that if all an individual is doing is directing specific tasks, they are not a supervisor. And more importantly, I would also point out to the court that in the McGinnis case, which plaintiff cites repeatedly, in that case, there is a footnote where the Ninth Circuit specifically deals with this issue of supervisor harassment. And I'll find it for you in just a moment. It is, it is footnote 13. And the Ninth Circuit says the distinction between supervisors and coworkers is not dependent on job titles or formal structures within the workplace, but rather upon whether a supervisor has the authority to demand obedience from the employee. In this case, Mr. Abbott and Mr. Burnham simply did not meet that standard. But even assuming, for purposes of this argument, that Mr. Abbott and Mr. Burnham were not over here in Farragher-Ellerth supervisor land, and they were over here in just being regular coworkers, then the standard is negligence. And the plaintiff has the burden of proving that the employer knew or should have known. And that after notice, the employer failed to take adequate remedial measures to reasonably, that were reasonably calculated to end the harassment. And in this case, liability and the negligence side, liability does not attach unless there's been no adequate remedial measures that were reasonably calculated. It doesn't have to work necessarily. It has to be reasonably calculated to end that harassment. And we submit that Ms. Harmon requested a remedy. Home Depot not only followed her remedy, but did much more than follow her remedy. Home Depot certainly tried to endeavor to find out whether or not the conduct had actually stopped. In this case, Ms. Harmon now says she lied at least six or seven times, at least a half a dozen times to Mr. Kilmer, at least once in a closed door meeting with Ms. Renninger. It's not as a policy matter responsible to hold an employer liable when an employee is admittedly lying to the employer and telling them they're fine. The employer is precluded from promptly correcting the behavior, or from taking further actions which would correct the behavior. A couple of other matters I wanted to just briefly touch on that came up. With respect to this whole, do we go by this issue by issue, certainly the Swenson case and the McGinnis case talk about, you look at the overall picture.  And you determine whether that response was reasonable to promptly correct the behavior. So specifically to your question about the differences between Farragher-Ellerth and the negligence standard, the way that I look at it, the first prong of the Farragher-Ellerth standard is to promptly correct, and the second element of the negligence standard is to promptly correct. Those standards, if you meet them under either test, are met here. You look at the overall picture. We know, let me just briefly address. The second prong was that the claimant had reasonably availed themselves of. The second prong of Farragher-Ellerth is that the claimant had reasonably availed themselves. The first prong is that the employer takes reasonable care to promptly correct. The break down the walls comment, it is a comment, as you point out, related to a corporate slogan. All of this discussion about whether it was subjectively or objectively reasonable is actually unnecessary. Because if you look at the record, Ms. Harmon received her evaluation on June 5th. It did not, that evaluation, that comment did not reasonably deter either from an objective or a subjective standard a person from complaining about Title VII related behavior. And how do we know that? Because six days later, on June 11th, she submitted a three and a half page single spaced typed complaint. Complaining about the same type of Title VII conduct that she had complained of on May 9th. And the complaint had nothing to do with her retaliation, not ostracism by her coworkers, and not just a general comment that I didn't happen to like that one statement in my evaluation that related to breaking down the walls. It was not a negative corporate use of a corporate slogan. It was a legitimate opportunity for an employer to counsel an employee to improve her performance on something that Ms. Harmon herself agrees was part of her job duties. Part of her job duties were working with others. That's one of the categories on the performance review, and it's something that she herself admits. They essentially would have these trucks. They would unload the trucks, and then everyone else would take the different portions of the things they were unloading and stock the shelves. And Ms. Harmon, in her deposition testimony, specifically says, what I do is I would finish my area, and then I would go to someone else's area, or vice versa. If her manager legitimately noticed that she was not doing so, there is simply, number one, there's no adverse action such that she can even make a prima facie case. But more importantly, even if she can make a prima facie case that there's an adverse action that's causally related to her prior complaint, the employer is entitled to come forward with a legitimate, non-discriminatory defense. Number one, that's what the job requires. And number two, it's part of a corporate slogan that is exactly what the comment on the evaluation says. And moreover, Ms. Harmon has the burden of pretext. Ms. Harmon has no evidence that Mr. Kilmer's statement to her about breaking down the walls was retaliatory, was acknowledging any type of harassment. In terms of the derisive comments, counsel has said that Mr. Abbott and Mr. Burnham both engaged in that conduct. That's not the case. Mr. Abbott allegedly engaged in the conduct, according to Ms. Harmon, one time when he said, don't say that, that's sexual harassment. In the Cortan case, the Ninth Circuit specifically rejected a comment like that and held as a matter of law that a supervisor standing in a hallway laughing and saying she got me on sexual harassment is not an adverse action. Certainly, one comment by Mr. Abbott would not do that. If you have no further questions. Let's see if the panel does. Judge Fletcher, do you have any? Judge King, any questions? No further questions. So thank you very much for your argument. Thank you. We appreciate it. Ms. Myers. Let me get back to the original harassment, which really is the major part of the case. Let's focus first of all on this issue of this June 11th complaint. She went to Mr. Gores again on June 4th and said that the workplace was still intolerable. She then writes a written complaint on June 11th that says, I'm afraid of working at this place. I'm not comfortable. I don't feel safe. It is hard for me to work around people that hurt me in so many ways and disrespect me. I'm asking to be transferred immediately to another store that is close by my home, preferably Kent. They did nothing. She had asked for the request a week before. They did nothing in terms of transfer. I thought that they were evaluating that and there was some manager that was unavailable. That's their version of the facts, Your Honor, but it was never discussed with her. I mean, her testimony is it was never discussed with her. Again, the issue, could a jury find that remedial measures were adequate? Sure, they could. Are they adequate as a matter of law? No. This Court said, for example, in the Fielder case, failure to transfer someone per their request is an example of inadequate measures. A jury could decide, and there's twin purposes, not only to stop harassment, which it didn't stop in this case, but also to remedy the harassment that's already occurred. The jury could find that simply doing what didn't work the first time is not adequate measures. The very clever use of this video to say that this was examples that related to Mr. Ms. Harmon's allegation, fortunately, the evidence is directly contrary. I asked Mr. Kilmore right before the excerpt that counsel read, did you mention any of the examples of the allegations that Ms. Harmon had told you about? No examples were given, just generalities that were on the video. They didn't tailor this to anything. They talked about what was in the tape. They didn't mention anything about Ms. Harmon's allegations to anyone and didn't investigate and did nothing about them until Ms. Harmon resigned. Weeks after telling Mr. Haytack about what was happening, six weeks after telling Mr. Kilmore, three weeks after going to Mr. Gores, and then two weeks after filing the written harassment complaint. A jury could easily find that whether you view a coworker or supervisor, that when you get cut off, and the Bray case out of Illinois is the closest to this, she was cut off. She was going to tell Mr. Haytack about everything that had happened. He cut her off and says, I know. We're trying to replace him. Just hang in there. When you get cut off by your supervisor, that is negligence. They knew or should have known had he done what he was supposed to, which was listen to the employee who was trying to file the complaint. Let me get to this issue because I have to say it is complicated, but I think opposing counsel has confused the two standards here. I do agree, and I think we agree, there is no split in the circuits. The standard under direct supervisors is strict liability unless the employer proves both parts of the defense. They cannot prove that she didn't avail her of the procedures. Therefore, the defense fails as a matter of law, and the law is strict liability. In the Nichols case, Your Honor, you addressed this very question. You wrote that in citing the Fuller case, which has been established in the circuit for a while, when the employer undertakes no remedy or where the remedy does not end the current harassment and deter future harassment, liability attaches for both the past harassment and any future harassment. It's not an open question in this circuit. Again, a jury – this is a quintessential jury issue. Whether you view it as supervisor or nonsupervisor, a jury could easily find that Ms. Harmon purported it, that they knew or should have known it way back when in April when she went to Mr. Haytek, and that Home Depot failed to take adequate remedial measures. Thank you, Your Honor. This was decided on summary judgment. Can you just list for me the disputed facts really specifically, not generalities? Sure. Well, I think the problem here is that the court took the facts in the light most favorable to the defendant. For example, whether or not – you just gave an example – whether or not she was told she was going to be transferred. She denies that. The question of whether she was told that anything was being done, whether or not that Mr. Burnham and Mr. Abbott were told anything about the specifics. Mr. Abbott and Mr. Burnham said they were told nothing about the specifics, and they didn't even know that Ms. – Mr. Abbott said he didn't know Ms. Harmon had filed a complaint or that the film involved her until after she was fired. The point is, Your Honor, the dispute – you're not only – She was never fired. No, no. After he resigned. I'm sorry. After he resigned. After she resigned. No, she was never fired. She resigned. So there are various – not only are there specific facts that are in dispute, it's also the legal significance of them and whether or not – knew or should have known – and whether they acted negligently. By the way, I didn't think that the – Pelley had argued that she was told she was going to be transferred. I thought just that they had said that someone – some HR person was coming to the store. Could she wait for some discussion? I believe they – different people testified to both things, Your Honor. That she left or whatever. Again, her testimony was no one ever talked to her about it at all. But again, Your Honor, the issue here is could – given the precedence of this case, the Nichols case, for example, they put the entire remedial burden on the plaintiff here. She did what she should do. She reported the harassment. It didn't stop. And again, that still has nothing to do with what happened before then. The harassment – all the – the major part of the harassment occurs before May 9th. And as to whether or not it's negligence or strict liability, they're still liable. Do you think Appellant and Pelley have disagreement about whether there's strict liability for harassment of a supervisor before remedial actions take place? I think, Your Honor, I think the Supreme Court has answered that question. It's strict liability unless – for supervisors. Unless they can prove both prongs of the defense. If they can't prove both prongs of the defense and they can't here because they can't prove she didn't avail herself of the procedure, it's strict liability. That answers the question on supervisor harassment. And again, given what Mr. – she was told that he – Mr. Abbott was in charge, the position was vacant. He was acting as de facto night department head. He was giving her assignments. He removed her from the electrical corral. This is also a matter of competence here, Your Honor. People weren't trained. Mr. Gores had – these people had apparently no training on how to deal with it. And they admitted their follow-up was asking how is it going. That's what they did to everybody. Treating a person who complains about sexual harassment the same as anyone else is inadequate remedial measures. Thank you, Your Honor. Thank you, Mr. Subit. Did you want to hear further from anyone else? I think we've heard thoroughly from both sides. It's very well argued by both the appellant and the appellee. We appreciate it. The case of Harmon v. Home Depot will be submitted. And we appreciate the excellent arguments of counsel. The final case of the day is on the briefs, submitted on the briefs. So we will adjourn now. Thank you all. All rise. This court for this session stands adjourned. Thank you.
judges: B. Fletcher, Gould, King